IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
|     RONALD PAUL SHAWD and | ) | |
| | ) | |
|     KIMBERLY ANN SHAWD, | ) | Case No. 03-46715-DRD |
| | ) | |
|               Debtors. | ) | |
| _____ | ) | Adv. No. 04-4015-DRD |
| | ) | |
| CENTRAL BANK OF LAKE OF THE | ) | |
| OZARKS, | ) | |
| | ) | |
|                Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RONALD PAULD SHAWD and | ) | |
| | ) | |
| KIMBERLY ANN SHAWD, | ) | |
| | ) | |
|               Defendants. | ) | |
| | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

The matter comes before the Court on the motion for summary judgment filed by defendants Ronald Paul Shawd and Kimberly Ann Shawd ("Defendants") against plaintiff Central Bank of Lake of the Ozarks ("Plaintiff" or "Central Bank"). Plaintiff filed a complaint challenging the dischargeability of the debt owed to it by Defendants under § 523(a)(2)(A). Defendants contend that Plaintiff is time-barred from pursuing its adversary proceeding challenging the dischargeability of Defendants' debt to Plaintiff because Plaintiff would be barred by the state statute of limitations from bringing a civil action for fraud. Plaintiff argues that an action on the existence of the debt is governed by the state statute of limitations for suit on a writing for

the payment of money, and that the action on the dischargeability of the debt is governed by the Bankruptcy Code and Rules. Plaintiff asserts that its non-dischargeability action against Ronald Shawd is timely under both the state statute of limitations and the Code provisions. Plaintiff concedes, however, that it does not have a timely action against Kimberly Shawd under § 523 by virtue of the fact that she did not sign a separate contract obligating her personally. For the reasons stated below, the Court grants Defendants' motion for summary judgment with respect to Kimberly Ann Shawd and denies Defendants' motion for summary judgment with respect to Ronald Paul Shawd. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(B) & (I).

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997); *In re Marlar*, 252 B.R. 743, 750 (B.A.P. 8th Cir. 2000). The party moving for summary judgment has the initial burden of proving that there is no genuine issue at to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Nelson v. Kingsley (In re Kingsley)*, 208 B.R. 918, 920 (B.A.P. 8th Cir. 1997). Once a moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Id.*; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Celotex*, 477 U.S. at 324. In ruling on a motion for summary judgment, "the evidence of the nonmovant

is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Marlar*, 252 B.R. at 750.

## II. BACKGROUND

Defendants were the sole shareholders, officers, and directors of Cuzins, Inc., a corporation previously existing under the laws of the State of Missouri ("Cuzins").[1] Cuzins' primary business was the purchase and sale of used vehicles.[2] Central Bank maintained a "line of credit" relationship with Cuzins as borrower, and Ronald Shawd executed a guaranty of Cuzins' debt to Central Bank (the "Guaranty").[3] Central Bank concedes that there is no similar contractual guaranty of Cuzins' debt to Central Bank executed by Kimberly Shawd, nor any other written contract between Central Bank and Kimberly Shawd.[4] On or about August 29, 1997, Central Bank loaned $20,000 to Cuzins in order for it to purchase a 1993 Mercedes Benz 300E, which was offered as security for the loan.[5] On that same date, Central Bank also loaned $32,000 to Cuzins in order for it to purchase a 1996 Jaguar X6, which was also offered as security for that loan.[6]

On October 20, 1998, Central Bank faxed a "Suspicious Activity Report" to a representative of the Federal Bureau of Investigation asserting that the title to the 1996 Jaguar was a "Salvage Title" and

---

[1] Complaint, ¶ 6; Answer, ¶ 6.

[2] Complaint ¶ 7; Answer, ¶ 7.

[3] Complaint ¶ 8; Answer, ¶ 8; Stipulation of Facts, ¶ 2.

[4] Stipulation of Facts, ¶ 3.

[5] Complaint ¶ 9; Answer, ¶ 9.

[6] Complaint ¶ 11; Answer, ¶ 11.

that it believed the mileage on the 1996 Jaguar was falsely represented to Plaintiff by Defendants.[7] On October 23, 1998, Central Bank obtained a "Carfax" report showing that the title to the Mercedes was a "Salvage Title."[8]

Defendants filed a bankruptcy petition on October 24, 2003. The first meeting of creditors was held on November 7, 2003. On January 16, 2004, Central Bank filed an adversary proceeding asserting that Defendants' debt to it is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).[9] Defendants assert in their motion for summary judgment that because Central Bank's adversary proceeding on nondischargeability is based on fraud, the state statute of limitations for fraud actions is applicable. Accordingly, Defendants contend that the Missouri five-year limitation period for fraud actions expired prior to the filing of the adversary complaint and Central Bank's dischargeability action is therefore barred. Plaintiff argues that an action on the existence of the debt is governed by the state ten-year statute of limitations for suit on a writing for the payment of money, and that the action on the dischargeability of the debt is governed by the Bankruptcy Code and Rules. Plaintiff asserts that its suit on the Guaranty to establish the debt and its non-dischargeability action against Ronald Shawd are timely.

---

[7] Stipulation of Facts, ¶ 4.

[8] Stipulation of Facts, ¶ 5.

[9] 11 U.S.C. § 523(a)(2)(A) provides:
> (a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt-
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

### III. DISCUSSION AND ANALYSIS

Every dischargeability proceeding involves two separate inquires. The first issue is whether the creditor holds an enforceable obligation under non-bankruptcy law. *See In re Roland*, 294 B.R. 244, 249 (Bankr. S.D.N.Y. 2003). The second issue is whether the debt is non-dischargeable under bankruptcy law. *Id.; see also, Resolution Trust Corp. v. McKendry (In re McKendry)*, 40 F.3d 331, 336 (10th Cir. 1994) (finding that in bankruptcy court there are two separate and distinct causes of action: one cause of action is on the debt and the other cause of action is on the dischargeability of that debt, a cause of action that arises solely by virtue of the Bankruptcy Code and its discharge provisions); *In re Moran*, 152 B.R. 493, 495 (Bankr. S.D. Ohio 1993) (stating that "a fundamental flaw in debtor's position is that it fails to recognize the distinction between a suit brought under state law to enforce state created rights and a suit filed in bankruptcy court to determine dischargeability issues under § 523(a) of the Bankruptcy Code."); *accord, Mills v. Gergely (In re Gergely)*, 110 F.3d 1448, 1453-54 (9th Cir. 1997); *see also, Richardson v. Hidy Honda, Inc. (In re Richardson)*, 221 B.R. 956, 961 (D. Wyo. 1998); *Brockenbrough v. Taylor (In re Taylor)*, 54 B.R. 515, 517 (Bankr. E.D. Va. 1985) (quoting 3 Collier on Bankruptcy ¶ 523.11 at 523-75 n. 9 (15th ed. 1985)).

In *McKendry*, the creditor obtained a deficiency judgment against the debtors in a state court action. The debtors subsequently filed bankruptcy and the creditor sought to have the debt determined nondischargeable under § 523(a)(2)(A). The debtors contended that, because the claim for an exception to discharge was based on fraud, the state statute of limitations which had expired was applicable, and prohibited the creditor from maintaining a claim of nondischargeability. The Court framed the question as being whether the creditor could attempt to prove that the underlying debt was

5

nondischargeable due to fraud when it established its debt in the state court under another theory and a fraud claim would be barred by the statute of limitations. *McKendry*, 40 F.3d at 334. The court went on to hold that the nondischargeability action could be maintained, observing that "the question of the dischargeability of the debt under the Bankruptcy Code is a distinct issue governed solely by the limitations periods established by bankruptcy law." *Id.* Similarly, in *Kaleta v. Sokolow*, 183 B.R. 639, 642 (M.D. Ala. 1995), the debtor asserted that the creditor's § 523(a)(2)(A) claim was barred by the state statute of limitations for fraud. The creditor, which held a claim based on a promissory note, alleged that he had been induced to lend the money on the basis of false pretenses and fraud. The fraud statute of limitations had expired, but not the statute of limitations on the creditor's claim for the debtor's contractual liability on the loan agreement. The court held that the applicable limitations period for establishing the debt was the state six-year statute of limitations for a contract action. *Kaleta*, 183 B.R. at 641. The court determined that the debt itself was not established as a debt for fraud but rather as a contract claim and was not barred by the applicable state statute of limitations. *Id.* at 642. The district court affirmed the bankruptcy court's order that established the debt as a matter of contract and then determined the non-dischargeability of the debt. *Id.*

This Court agrees with those courts that hold that there are two separate and distinct inquiries involved when assessing the dischargeability of a debt. First, the initial question is whether Central Bank established and sought to enforce the debt owed to it by defendant Ronald Shawd within the period prescribed by the Missouri statute of limitations. Plaintiff contends that the debt owed to it by Ronald Shawd is based on a written guaranty agreement and thus governed by Mo. Rev. Stat. § 516.110, which states that "[a]n action upon any writing, whether sealed or unsealed, for the payment of money or

property" must be commenced within ten years. Mo. Rev. Stat. § 516.110; *see also, Mark Twain Bank, N.A. v. Platzelman*, 740 S.W.2d 388, 390 (Mo. Ct. App. 1987) ("... written guaranty is governed by the ten-year statute of limitations set out in § 516.110."). The Court agrees. Although evidence before the Court regarding when the cause of action on the Guaranty accrued and the applicable statute of limitations began to run is scant, it appears that the relevant loans were made in 1997. Thus, it is clear that the cause of action on the Guaranty could not have accrued and triggered the commencement of the limitations period prior to 1997. Thus, suit under state law to establish the debt on the Guaranty is not barred by the state ten-year statute of limitations and that claim remained viable as of the date of the filing of the adversary proceeding.

The second distinct issue is the question of the dischargeability of the debt under the Bankruptcy Code which is governed solely by the limitations period established by bankruptcy law. *See McKendry*, 221 B.R. at 961. The applicable limitations period in the Bankruptcy Code is the sixty day period provided by Rule 4007(c) for certain claims described in § 523 which provides that "a complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a)." Fed. R. Bankr. P. 4007(c); *see also, McKendry*, 40 F.3d at 337; *Richardson*, 221 B.R. at 961-62; *Kaleta*, 183 B.R. at 642; Here, the first date set for the meeting of creditors was November 7, 2003, and Central Bank filed its adversary complaint 59 days later on January 16, 2004. Accordingly, Central Bank complied with Rule 4007(c) for purposes of its suit to determine the dischargeability of the debt.

Defendants cite *In re Wilder*, 178 B.R. 174, 177 (Bankr. E.D. Mo. 1995), for the proposition that if a creditor's action is time-barred under state law, the creditor's § 523(a)(2)(A) action is likewise

7

time-barred. Defendants assert that Plaintiff's cause of action sounds in fraud and is thus governed by the Missouri five-year statute of limitations. This case is distinguishable from *Wilder,* however, because Plaintiff's action under state law is not time-barred. As discussed above, Plaintiff asserts a cause of action under state law on a written instrument for the payment of money to establish the debt on the Guaranty, and only raises the fraud issue with regard to the suit on the nondischargeability of such debt.

Defendants also attempt to distinguish *McKendry*, 40 F.3d at 341, by claiming that it holds a creditor must file an action on the debt prior to the bankruptcy filing. Defendants, however, misconstrue *McKendry*. That court clearly found that, although in the case before it the debt had already been established in state court, the relevant question is whether the creditor sought to enforce its debt against the debtor within the period prescribed by the state statute of limitations. *Id.* at 337. Contrary to Defendants' assertion, it is not necessary that Central Bank have established the debt or instituted legal action prior to the bankruptcy filing. So long as the applicable state statute of limitations has not yet run, Central Bank can seek to establish the debt in this Court. *See, e.g., Kaleta*, 183 B.R. at 642.

Central Bank concedes that there is no similar contractual guaranty of Cuzins' debt, nor any other written contract, between Central Bank and Kimberly Shawd, and that it does not have a timely action against Kimberly Shawd under § 523.

## IV.  CONCLUSION

Although Central Bank could not maintain a claim against either of the Defendants under state law on a claim for fraud, it had, at the time of the filing of the bankruptcy petition and the adversary complaint, and still has, a claim against Defendant Ronald Shawd for his contractual liability on the Guaranty which is not time barred. Because it has a claim against defendant Ronald Shawd that it may

8

still assert, and has timely filed its nondischargeability complaint pursuant to the applicable provisions of the Bankruptcy Code and Rules, Central Bank may claim that that indebtedness arose out of conduct which renders the debt nondischargeable under § 523(a)(2)(A).  For the above reasons, the Court grants Defendants' motion for summary judgment  with respect to Kimberly Ann Shawd and denies Defendants' motion for summary judgment with respect to Ronald Paul Shawd.

The foregoing constitutes my Findings of Fact and Conclusions of Law in accordance with Rules 9014(c) and 7052 of the Federal Rules of Bankruptcy Procedure.   A separate order will be entered as required by Rule 9021.

/s/ Dennis R. Dow

Bankruptcy Judge

Date: July 9, 2004


Copies to:

Thomas G. Pirmantgen

Gregory M. Garvin